**UNITED STATES, Appellant,**

v.

**Elwood C. ANDERSON, Appellee.**

**No. 80–774.**

District of Columbia Court of Appeals.

Jan. 5, 1983.

Before NEWMAN,* Chief Judge, KELLY,* KERN, NEBEKER, MACK, FERREN, PRYOR, BELSON, and TERRY,** Associate Judges, and GALLAGHER,* Associate Judge, Retired.

### ORDER

PER CURIAM.

On consideration of appellee's petition for rehearing en banc and it appearing that a majority of the judges of this court has voted to deny the petition, it is

ORDERED that appellee's petition for rehearing en banc is denied. 450 A.2d 446.

Separate statement by GALLAGHER, Associate Judge, Retired, with whom KERN and NEBEKER, Associate Judges, join, as it relates to the petition for rehearing en banc.

GALLAGHER, Associate Judge, Retired:

As a member of the court which decided this case, I would have rehearing (*see* Sections X (C)(D) and XI (A)(C)(D)(F) of this court's Internal Operating Procedures) and I am disappointed that a majority of the full court voted not to hear it en banc.

Appellee (Officer Anderson) was the subject of a criminal investigation on a complaint by a fellow officer alleging he had

---

in this case, however, was rendered before that decision, which was prospective. *Id.* at 717.

* Denotes merits division.

** Associate Judge Terry did not participate in this case.

assaulted, by kicking, a fugitive narcotics dealer upon apprehension after a chase. The United States Attorney's Office later decided prosecution was not warranted due to lack of available evidence and the Police Department was so advised, and it was pointed out by the United States Attorney's Office that administrative procedures by the Police Department regarding the complaint, *viz.,* a hearing to determine whether discipline of Officer Anderson should be imposed, remained available for pursuit if deemed appropriate.

Thereupon, Officer Anderson was directed to appear before Lieutenant Giles, where he was instructed as follows:

Officer Anderson, on Wednesday, September 13, 1978, at 0200 hours, you were advised of your rights as established by the Supreme Court in the cases of *Miranda v. Arizona*[1] and *Garrity v. New Jersey,*[2] concerning the arrest of Mr. Gregory Akers, male, D.O.B. of May 2, 1953, who resides at 908 T Street, N.W., Washington, D.C.

At that time, due to the criminal nature of the allegation made against you, you chose to exercise your constitutional rights by not answering any question, nor did you submit a statement, on the advice of your attorney Mr. John Marcus.

Since that time, an in depth investigation has been undertaken and in accordance with matters of this nature, all reports and statements gathered to date were presented to the United States Attorney's Office for possible criminal prosecution. On Tuesday, September 26, 1978, a memorandum was received from Mr. Joseph B. Valder, Deputy Chief of the Grand Jury Intake Section wherein he advises that after a thorough evaluation of the allegation made against you, it has been determined that this matter lacks prosecutive merit.

*Inasmuch as no criminal charges will be preferred against you,* coupled with the fact that this matter *is still being actively investigated from an administrative standpoint,* it now has become mandatory that I administer a *Reverse Garrity* warning to you.

At this time, *I am going to require you to furnish me a statement, in addition to questioning you about the allegations made against you by Officer Leonard J. Campbell of the Third District.* Briefly, Officer Campbell alleges that on Tuesday, September 12, 1978, you kicked a prisoner, Gregory O. Akers, while he was handcuffed and being held by two other police officers. *This questioning concerns administrative matters relating to the official business of the Police Department. I am not questioning you for the purpose of instituting criminal charges and prosecution against you.* During the course of this questioning, even if you do disclose information which indicates that you may be guilty of criminal conduct, *neither your self-incriminating statements nor the fruits* of any self-incriminating statements you make *will be used against you in any criminal legal proceedings.*

*Since this matter is an administrative matter and any self-incriminating information you may disclose will not be used against you in a court of law, you are required to answer my questions fully and truthfully.* This requirement is set forth in Metropolitan Police Department General Order Number 1202.1, Part 1, Section 18, and in Section 2.1:5 of the Metropolitan Police Department Manual. *If you refuse to answer my questions, this in itself is a violation of the rules of the Department, and you will be subject to disciplinary penalties.*

QUESTION: Do you understand what I have just explained to you?

ANSWER: Yes.

QUESTION: Do you have any questions concerning what I have just explained to you?

ANSWER: No.

**1.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

*I will now order you to relate to me your account of this matter.* [Emphasis added.]

Officer Anderson obeyed the order he had been given,[3] surrendered a previously claimed assertion of his constitutional right not to give a statement, and proceeded to make to his superior two written statements on the alleged assault incident. In so doing, he incriminated himself by essentially admitting he had kicked the arrestee, but said it was accidental not deliberate. Soon thereafter the government turned right around and indicted him on the assault charge, plus an additional charge of obstruction of justice. Consequently, the government violated the pledge the high police official had made to Officer Anderson, and succeeded in fleecing him out of his previously declared constitutional right. As a matter of integrity of government in the administration of criminal justice, this court in the past has always been meticulous in requiring the government to live up to pledges made to criminal defendants.

In *Green v. United States,* 377 A.2d 1132, 1134 (D.C.1977) (Mack, J.), the court had this to say on the subject of governmental promises to defendants:[4]

> In order to maintain the integrity of their office, prosecutors must be held "to meticulous standards of both promise and performance . . . ." It follows, therefore, that a defendant must be afforded appropriate relief when the government fails to fulfill its promise. [Citation omitted.]

Putting the court's policy even stronger, in discussing a similar type of governmental promise in relation to plea bargaining, the court stated it this way:

> [T]he government must meet a standard of strict compliance with its agreement. The court will construe any ambiguity

against the government. *White v. United States,* D.C.App., 425 A.2d 616, 618 (D.C.1980) (Ferren, J.). [Citation omitted.]

But in this case, in overruling the trial court's suppression of various documents, this court is clearing the way for admission into evidence at appellee's upcoming trial the two statements he was misled into giving to the police. Not only that, the full court is now refusing to so much as enter the courtroom to hear appellee's argument on this important issue, which penetrates deeply into the integrity of the administration of criminal justice in this jurisdiction. The full court has not been at all backward about hearing all sorts of dubious cases en banc recently.

I will relate curious cases in point:

(1) An evidentiary sufficiency issue in an automobile intersection collision case, *WMATA v. Jones,* 443 A.2d 45 (D.C.1982) (en banc), hardly a momentous "law making" question.

(2) Another recent en banc case in contravention of our rules was *District of Columbia v. Cooper,* 445 A.2d 652, 653 (D.C.1982), where the issue was, "whether there was sufficient evidence to support the jury's conclusion that the District of Columbia, by any negligent act or failure to act, proximately caused injury to appellee."

By no stretch of the imagination should these two statements of appellee escape his motion to suppress, yet this is what the court's opinion holds. Leaving everything else aside, the statements were given due to an express *order* of a high police official and appellee was told he had no right to refuse because there would be no criminal prosecution and it was solely an internal

---

3. It is perhaps unnecessary to state that the Police Department is a para-military organization.

4. There is utterly no factual dispute here on the promise made to appellant. It is contained in a written document in the record. It is irrelevant *that here the* promise was made by a high police official not the prosecutor. Under the

circumstances of this case, it was the government speaking when Officer Anderson was ordered to give a statement. This commitment should in good conscience be honored at all levels. The government should not seek convictions on a dishonorable basis. We do not need convictions that way.

administrative procedure. The court is making new law and it is bad law.

I do not understand the reluctance of a majority of the court to hear this case en banc. Our Rule 40 requires the court to go en banc in cases involving (a) those of exceptional importance, or (b) those not in conformance with the court's prior decisions. This case presents both situations. It is not only "exceptionally important" due to its effect on the integrity of the administration of criminal justice, but it also conflicts with our prior decisions, *e.g.*, *Green v. United States, supra,* and *White v. United States, supra.*

The everlasting beacon of the judiciary is "equal justice under law." At the very least, the full court should have gone into the courtroom and heard this case argued. This police officer defendant, too, is entitled to equal protection of the law.[5]

---

5. Now appellee presumably is left only with an opportunity to convince the trial court that in justice he should be able to raise the manifest due process of law issue.